UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re                                                          :
                                                               :
                                                               :
WILLIAM CHARLES BACE,                                          :
                                                               :
                                                               :
                                            Debtor.            :

---------------------------------------------------------------x

WILLIAM CHARLES BACE,                                          :
                                                               :
                                            Appellant,         :
                                                               :
                    - against -                                :   Case No. 11-cv-06065 (PAC) (HBP)
                                                               :
TRUSTEE ROY BABITT, *et al.*,                                  :
                                                               :
                                            Appellees.         :

---------------------------------------------------------------x


**BRIEF OF APPELLEES THE CITY OF NEW YORK DEPARTMENT**
**OF FINANCE AND THE NEW YORK CITY POLICE DEPARTMENT**


MICHAEL A. CARDOZO
Corporation Counsel of the
  City of New York
Attorney for the City of New York
  Department of Finance and the
  New York City Police Department
100 Church Street, Room 5-310
New York, New York 10007
Tel: (212) 788-1172

Joshua M. Wolf,
        *Of Counsel.*

January 19, 2012

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ……………………………………………………… iii

THE ISSUES PRESENTED AND STANDARD OF APPELLATE REVIEW ..………… 1

STATEMENT OF THE CASE ……………………………………..……………... 2

    A.    The Course of the Proceedings ……………………………………… 2

    B.    The Disposition in the Court Below ……………………………… 4

    C.    Statement of the Facts ………………………………………… 5

        1.    DOF's Claim Against Debtor ……………………………… 5

        2.    The City's Handling of Debtor's 1992 Subaru …………………… 6

ARGUMENT ……………………………………………..…………… 9

    I.    PARKING FINES AND PENALTIES ARE NONDISCHARGEABLE DEBTS PURSUANT TO THE UNAMBIGUOUS LANGUAGE OF 11 U.S.C. § 523(a)(7) …………………………………………... 9

    II.    THE BANKRUPTCY COURT'S CONCLUSION THAT DEBTOR'S 1992 SUBARU HAD A VALUE OF $750.00 WAS NOT CLEARLY ERRONEOUS AND MUST BE AFFIRMED ………………………………… 12

    III.    THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN IMPOSING PUNITIVE DAMAGES ON THE CITY ABSENT A FINDING THAT THE CITY VIOLATED THE AUTOMATIC STAY WITH MALICE OR IN BAD FAITH, BUT EVEN IF THE COURT DETERMINES THAT PUNITIVE DAMAGES ARE WARRANTED, IT WAS NOT CLEARLY ERRONEOUS FOR THE COURT TO FIX SUCH DAMAGES AT $250.00 ………………………………… 14

i

**Page**

IV.   THE   BANKRUPTCY   COURT   APPLIED   THE
PROPER       STANDARD       IN       EVALUATING
DEBTOR'S   MOTION   PURSUANT   TO   FEDERAL
RULE OF BANKRUPTCY PROCEDURE 9023, AND
IT  WAS  NOT  AN  ABUSE  OF  DISCRETION  FOR
THE BANKRUPTCY COURT TO DENY DEBTOR'S
MOTION UPON FINDING THAT DEBTOR FAILED
TO SATISFY SUCH STANDARD ………………………………………….   17

CONCLUSION …………………………………………………………...……………   21

## **TABLE OF AUTHORITIES**

**CASES**                                                                                              **Page**

*In re 114 Tenth Ave. Ass'n,*
    441 B.R. 416 [S.D.N.Y. 2010] ………………………………………………...   1

*Anderson v. Bessemer City,*
    470 U.S. 564 [1985] ………………………………………………………   13-14, 17

*In re Asia Global Crossing, Ltd.,*
    332 B.R. 520 [Bankr. S.D.N.Y. 2004] …………………………………………   20

*Bank of Am., N.A. v. Adomah (In re Adomah),*
    368 B.R. 134 [S.D.N.Y. 2007] …………………………………………………   15-16

*In re B. Cohen & Sons Caterers, Inc.,*
    108 B.R. 482 [E.D. Pa 1989] …………………………………………………   16, 16 n.9

*In re Best Payphones, Inc.,*
    2008 Bankr. LEXIS 2555 [Bankr. S.D.N.Y. 2008] ………………………………   20

*In re Burkhardt,*
    220 B.R. 837 [Bankr. D.N.J. 1998] ……………………………………………   11

*In re Busby,*
    46 B.R. 15 [Bankr. E.D.N.Y. 1984] ……………………………………………   11

*In re Caggiano,*
    34 B.R. 449 [Bankr. D. Ma. 1983] ……………………………………………   12

*Cody, Inc. v. County of Orange (In re Cody, Inc.),*
    338 F.3d 89 [2d Cir. 2003] ……………………………………………………...   1

*In re Crawford,*
    388 B.R. 506 [Bankr. S.D.N.Y. 2008] …………………………………………   15

*In re Crozier Bros., Inc.,*
    60 B.R. 683 [Bankr. S.D.N.Y. 1986] …………………………………………   1, 19

*In re Crysen/Montenay Energy Co.,*
    902 F.2d 1098 [2d Cir. 1990] …………………………………………………...   15

*In re Dill,*
    163 B.R. 221 [E.D.N.Y. 1994] …………………………………………………   13, 17

**CASES (continued)**                                                              **Page**

*In re Emmerling,*
    223 B.R. 860 [2d Cir. B.A.P. 1997] …………………………………………    13-14, 17

*Empire Bonding Agency v. Lopes (In re Lopes),*
    339 B.R. 82 (Bankr. S.D.N.Y. 2006) …………………………………………...    10-11

*In re Gallagher,*
    71 B.R. 138 [Bankr. N.D. Ill. 1987] …………………………………………….    12

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,*
    456 U.S. 844 [1982] …………………………………………………………….    14

*Johnson v. City of New York Department of Finance,*
    2003 N.Y. Slip Op. 50837U [N.Y. App. Term, April 9, 2003] …………………...    11

*Kelly v. Robinson,*
    479 U.S. 36 (1986) …………………………………………………………….....    10

*In re Klein,*
    226 B.R. 542 [Bankr. D.N.J. 1998] …………………………………………….    16

*In re Layton,*
    220 B.R. 508 [Bankr. N.D.N.Y. 1998] ………………………………………….    15

*In re Lyondell Chem. Co.,*
    2009 Bankr. LEXIS 724 [Bankr. S.D.N.Y. 2009] ……………………………...    20

*In re Meltzer,*
    11 B.R. 624 [Bankr. E.D.N.Y. 1981] …………………………………………...    11

*In re Mims,*
    2010 Bankr. LEXIS 3695 [Bankr. S.D.N.Y. 2010] ………………………………    3 n.3

*In re Pachman,*
    2010 Bankr. LEXIS 1221 [Bankr. S.D.N.Y. 2010] ……………………………….    1

*Stevens v. Commercial Collection Serv. (In re Stevens),*
    184 B.R. 584 [Bankr. W.D. Wash. 1995] ……………………………………….    11

*In re Taite,*
    76 B.R. 764 [Bankr. C.D. Cal. 1987] …………………………………………...    12

*Toledo Scale Co. v. Computing Scale Co.,*
    261 U.S. 399 [1923] …………………………………………………………….    19

**CASES (continued)**                                                          **Page**

*In re Unified Court System,*
    58 N.Y.2d 876 [1983] …………………………………………………...   7 n.4

*U.S. HUD v. Cost Control Mktg. & Sales Mgmt.,*
    64 F.3d 920 [4th Cir. 1995] …………………………………………   11

*United States v. Yellow Cab Co.,*
    338 U.S. 338 [1949] ……………………………………………………   14

*In re Wagner,*
    74 B.R. 898 [Bankr. E.D. Pa. 1987] …………………………………...   16

**STATUTES/RULES**

11 U.S.C. § 101, et seq. ………………………………………………………   2

11 U.S.C. § 101 ………………………………………………………………   12

11 U.S.C. § 101[27] …………………………………………………………   10

11 U.S.C. § 362 ………………………………………………………………   13

11 U.S.C. § 362[k][1] ……………………………………………………...   1, 5, 15-16

11 U.S.C. § 522[a][2] ………………………………………………………..   12-13

11 U.S.C. § 523[a][7] ………………………………………………………..   1, 4, 9-12

11 U.S.C. § 727 ……………………………………………………………....   3

Fed. R. Bankr. P. 8013 ………………………………………………………   1, 13

Fed. R. Bankr. P. 9023 ……………………………………………………..   1, 5, 17, 19, 21

## THE ISSUES PRESENTED AND STANDARD OF APPELLATE REVIEW

(1) Whether the bankruptcy court properly determined that debtor's pre-petition parking fines and penalties are non-dischargeable under the plain language of 11 U.S.C. § 523(a)(7)?  On appeal, the Court must review this legal question *de novo* (*see, e.g., Cody, Inc. v. County of Orange (In re Cody, Inc.)*, 338 F.3d 89, 94 [2d Cir. 2003]; *In re 114 Tenth Ave. Ass'n*, 441 B.R. 416, 424 [S.D.N.Y. 2010]).

(2) Whether the bankruptcy court properly determined the amount of actual damages awarded to Debtor for the City's sale of his 1992 Subaru?  The bankruptcy court's decision must be affirmed unless "clearly erroneous" (Fed. R. Bankr. P. 8013).

(3) Whether the bankruptcy court erred in determining that the debtor was entitled to a punitive damages award of $250.00 for the City's violation of the automatic stay?  The bankruptcy court's decision to award punitive damages under 11 U.S.C. § 362(k)(1) is reviewed using an abuse of discretion standard, while the decision regarding the amount of damages awarded should be reviewed for clear error (*see In re Pachman*, 2010 Bankr. LEXIS 1221 at *9 [Bankr. S.D.N.Y. 2010]; Fed. R. Bankr. P. 8013).

(4) Whether the bankruptcy court properly denied the debtor's motion for reargument?  This Court reviews *de novo* the standard employed by the bankruptcy court to evaluate Debtor's motion for reargument under Federal Rule of Bankruptcy Procedure 9023.  The bankruptcy court's denial of debtor's motion, because it "fail[ed] to present a cognizable basis" to reconsider the court's Order, may be reversed only for an abuse of discretion (*see, e.g., In re Crozier Bros., Inc.*, 60 B.R. 683, 688 [Bankr. S.D.N.Y. 1986]).[1]

---

[1] Debtor has abandoned all other issues set forth in the "Amended Statement of Issues" filed in furtherance of his appeal (*see* Docket No. 306 at 2-3), including all arguments relating to the 1997 Subaru.  The discussion herein is limited accordingly.

1

## STATEMENT OF THE CASE

Appellees the City of New York Department of Finance ("DOF") and the New York City Police Department (the "NYPD") (collectively, the "City") respectfully submit this brief in opposition to the appeal of William Charles Bace ("Debtor") from two separate Orders issued by the Honorable Robert D. Drain of the United States Bankruptcy Court for the Southern District of New York.

### A.     The Course of the Proceedings

On October 16, 2005 (the "Petition Date"), Debtor filed a voluntary petition for relief (the "Petition") under chapter 13 of the United States Bankruptcy Code (the "Code") (*see* Docket No. 1; *see also* 11 U.S.C. § 101, et seq.).[2]  Accompanying Debtor's Petition were the requisite schedules, which set forth the sum total of the Debtor's real and personal property, along with any exemptions Debtor claimed with respect to such property.  For example, on Debtor's Schedule B (entitled "Personal Property") Debtor listed, among other items not relevant to this appeal, a 1992 Subaru car allegedly having a market value of $1,000 (*see* Docket No. 1, Schedule B).  On Debtor's Schedule C (entitled "Property Claimed as Exempt"), he listed the same 1992 Subaru, but did so by reference to the federal rather than New York State statutory grounds for claiming exemptions (*see id.*, at Schedule C).  Additionally, on his Schedule F (entitled "Creditors Holding Unsecured Nonpriority Claims"), Debtor indicated an undisputed claim in the amount of $2,228.00 for "Fines" owed to "NYC Parking Fines P.O. Box 3670 NY NY 10008" with respect to account number "20119JJ" (*see id.*, at Schedule F).

By Order of the bankruptcy court, dated March 9, 2006, Debtor's chapter 13 case was converted to a chapter 7 case (*see* Docket No. 13).  Thereafter, on or about May 2, 2006, Debtor

---

[2] References to "Docket No. ___" are references to filings in the docket of the bankruptcy court below.  Excerpts of such materials are included herein only to the extent they are relevant to the Court's decision.

filed an amendment to his Schedule C in order to reflect the appropriate New York State rather than federal statutory exemptions (*see* Docket No. 38).[3]  Debtor did not include any motor vehicle in his amended Schedule C (*id.*).

Eventually, on May 7, 2009, Debtor was granted a discharge of most of his debts (the "Discharge Order") in accordance with the requirements of 11 U.S.C. § 727 (*see* Docket No. 249).  On page two of the Discharge Order, Debtor was expressly notified that some common types of debts are not discharged in a chapter 7 bankruptcy case, including "[d]ebts for most fines [and] penalties . . . ." (*id.* at 2).

On or about July 9, 2009, Debtor moved the bankruptcy court for an Order holding DOF in contempt for allegedly violating the automatic stay by towing and selling his 1992 Subaru to satisfy pre-petition parking fines and penalties (the "First Motion") (*see* Docket No. 253).  A hearing on the First Motion was held on October 30, 2009 (*see* Docket No. 268).  Debtor did not appear at this hearing, resulting in a default on his motion.  As a consequence, the Court awarded attorneys' fees both to the Chapter 7 Trustee's counsel and counsel from the Office of the Corporation Counsel for their time spent in needlessly attending the hearing (*see id.* at 4-5, 11).

Thereafter, at Debtor's request, the Court scheduled a second hearing for June 16, 2010. At this second hearing, Debtor offered a reasonable excuse for his prior default and the Court withdrew the award of attorneys' fees.  Debtor, for the first time, also presented a copy of an auction bill of sale issued by the NYPD on March 22, 2006 (the "Auction Bill of Sale") as evidence that the City had sold his 1992 Subaru at auction.  Until then, based only upon a review of DOF's and the DMV's computer records—since DOF was the only City agency implicated by

---

[3] "The Bankruptcy Code contains a set of federal exemptions and permits debtors to choose between either federal or state exemptions. However, the Bankruptcy Code also permits individual states to 'opt-out' of the federal exemption scheme. Pursuant to N.Y. Debt. & Cred. Law § 284, New York is one state that has opted-out from the federal exemption scheme" (*In re Mims*, 2010 Bankr. LEXIS 3695 at *4, n.3 [Bankr. S.D.N.Y. 2010] (internal citations omitted)).  Accordingly, the New York State, rather than the federal, statutory exemptions apply.

Debtor's First Motion—DOF believed that the 1992 Subaru had never been sold by the City,

even in partial satisfaction of DOF's claim against Debtor.  While it is true that DOF never sold

the 1992 Subaru, DOF's records did not disclose that its sister agency, the NYPD, had.  At this

hearing the Court granted Debtor leave to file a second motion in order to raise the new evidence

of the City's sale of his 1992 Subaru, which Debtor ultimately filed on September 9, 2010 (*see*

Docket No. 283) (the "Second Motion").

      In his Second Motion, Debtor alleged claims against both the NYPD and DOF (*see id.*).

As is relevant here, Debtor sought: (i) a declaration that parking fines and penalties are

dischargeable debts, and accordingly, a determination that Debtor's pre-petition parking fines

and penalties are discharged; (ii) a declaration that the impoundment and sale at auction of

Debtor's 1992 Subaru in satisfaction of his pre-petition parking fines and penalties violated the

automatic stay provision of section 362 of the Code; and (iii) an award of actual damages and

punitive damages against the City for its violation of the automatic stay (*see id.*).  The City

opposed Debtor's Second Motion (*see* Docket No. 284).  A hearing was then held on November

23, 2010, at which the parties discussed the merits of Debtor's Second Motion, the Court issued

a preliminary ruling in favor of the City holding that Debtor's unpaid parking fines and penalties

were nondischargeable (*see* Docket No. 296 at 12), and Debtor demanded an evidentiary hearing

in order to prove the extent of his damages (*see id.* at 3, 6-7, 15).  Debtor's evidentiary hearing

on damages was held on June 6, 2011 (*see* Docket No. 297).

**B.**    **The Disposition in the Court Below**

      As is relevant to this appeal, by Order dated June 28, 2011, the bankruptcy court ruled

that: (i) Debtor's pre-petition parking fines and penalties are non-dischargeable debts pursuant to

11 U.S.C. § 523(a)(7); (ii) the City's impoundment and sale of the Debtor's 1992 Subaru to

collect pre-petition parking fines and penalties violated the automatic stay; (iii) as a result of the

City's violation of the automatic stay, the Debtor was entitled to actual damages in the amount of

$815.00 under 11 U.S.C. § 362(k)(1); and (iv) a punitive damages award was appropriate as

against the City in the amount of $250.00 (*see* Docket No. 299; a copy of the court's first June

28, 2011 Order is annexed hereto as the City's Exhibit "1" for the Court's convenience).

Subsequent to the evidentiary hearing on the Second Motion, on or about June 13, 2011,

Debtor filed a motion for reargument pursuant to Federal Rule of Bankruptcy Procedure 9023

(the "Motion to Reargue") (*see* Docket No. 295).  In his Motion to Reargue, Debtor requested

yet another opportunity to present evidence on damages, "including, but not limited to, pain and

suffering [and] emotional distress . . . ." (*id.* at 2).  By separate Order, also dated June 28, 2011,

the bankruptcy court denied Debtor's motion (*see* Docket No. 300 (citing cases); a copy of the

court's Order denying Debtor's Motion to Reargue is annexed hereto as the City's Exhibit "2").

The court ruled that Debtor's Motion to Reargue did not "present a cognizable basis under Rule

9023 to reconsider" its prior Order for three reasons: (i) the Court fully considered Debtor's

written submissions, which failed to quantify any intangible damages; (ii) Debtor was provided a

full and fair opportunity to present any evidence at the evidentiary hearing held on June 6, 2011,

yet he failed to do so; and (iii) the court fully considered all possible damages available when it

chose to award Debtor punitive and compensatory damages (*see* Ex. 2 at 1-2).  This appeal

followed.

**C.     Statement of the Facts**

      *1.     DOF's Claim Against Debtor*

On May 31, 2006, DOF filed a proof of claim in the amount of $3,800.98 for unpaid

parking fines, including penalties and interest.  On November 7, 2008, DOF amended its proof of

claim to reflect an adjusted total debt of $4,123.46 for unpaid parking fines, including penalties

and interest (*see* Claims Register No. 24-1).  This number continues to grow.  Indeed, as of

November 4, 2010, Debtor owed DOF an aggregate of $5,494.32 in fines for twenty-nine (29)

unpaid parking violations, including penalties and interest (*see* the Declaration of Ellen Young,

annexed as Exhibit 2 to the City's response papers, Docket No. 284, and annexed hereto as the

City's Exhibit "3", at ¶ 2).  Fourteen (14) of the twenty-nine unpaid parking violations related to

Debtor's 1993 GMC Van, license plate number "20119JJ", and were incurred between July 6,

2004 and October 30, 2004 (*see* Ex. 3, at ¶¶ 6-9).  Eleven (11) of the twenty-nine unpaid parking

violations related to the Debtor's 1992 Subaru, license plate number "DJE5122", and were

incurred between October 28, 2005 and January 24, 2006 (*see id.* at ¶¶ 10-14).  The remaining

four (4) unpaid parking violations related to the Debtor's 1997 Subaru, license plate number

"ENU6877", were incurred post-petition, and are no longer at issue in this proceeding (*see id.* at

¶¶ 24-28).

> ## 2.    *The City's Handling of Debtor's 1992 Subaru*

Debtor's 1992 Subaru was towed on three separate occasions after the Petition Date.

First, the Debtor's 1992 Subaru was towed on December 13, 2005.  Despite Debtor's claims to

the contrary (*see* App. Br. at 8), DOF records do not indicate that it or a City Marshal were in

any way involved in this tow (*see generally* Ex. 3).  Accordingly, it is the City's belief that the

towing was undertaken by the NYPD, a contention to which Debtor offers no contrary evidence.

Nor does Debtor offer any evidence that the NYPD had any knowledge of Debtor's pending

bankruptcy proceeding as of December of 2005 such that the towing would constitute a violation

of the automatic stay.  Indeed, it did not (*see* Docket No. 3, the Certificate of Service affixed to

the Notice of 341(a) Meeting of Creditors).  The 1992 Subaru was released to Debtor upon his

provision of proof of the pending bankruptcy, and neither the estate nor Debtor suffered any damage as a result of this towing.

Second, in reliance upon DOF's computerized records system, a New York City Marshal towed the 1992 Subaru on January 6, 2006 (*see* Ex. 3 at ¶ 15; App. Br. at 8).[4]  DOF records indicate that this was the one and only instance where a City Marshal was involved with Debtor's 1992 Subaru.  Under ordinary circumstances, after DOF receives notice that a bankruptcy petition has been filed, a member of its clerical staff promptly inputs a notation in the relevant computer database indicating that a "hold" is in place and that no further collection action should be taken (*id.* at ¶ 16).  All City Marshals rely on DOF's records in pursuing parking violation claims on behalf of DOF (*id.* at ¶ 17).  So, absent entry of a "hold", there is simply no means by which DOF is able to prevent collection actions by a City Marshal against an individual with parking violations classified as "in judgment".[5]

Here, despite allegations that DOF had previously been served notice of Debtor's pending bankruptcy by mail, it appears either that actual notice was never received, or, at worst, it is plausible that DOF's clerical personnel inadvertently failed to input a "hold" on Debtor's account following receipt of such notice (*id.* at ¶ 18).  As a consequence, either because notice was not actually received by DOF in this instance, or because no "hold" notation was entered in the files associated with Debtor's many parking violations, a City Marshal erroneously towed Debtor's vehicle (*id.*).  The City cannot explain exactly how or why it came to be that DOF failed to receive actual notice of Debtor's bankruptcy proceeding, or in the alternative, how or

---

[4] New York City Marshals are public officers and independent contractors, but are not employees of the City of New York (*see, e.g.*, *In re Unified Court System*, 58 N.Y.2d 876, 878 [1983]).

[5] When an individual fails to challenge or pay their parking fines for a period of not less than 90 days, a judgment is entered with respect to such fines.  In the normal course of events, once an individual has accrued more than $350.00 worth of fines "in judgment", any vehicle owned by that individual becomes "tow eligible"—that is, subject to seizure and sale (*see* Ex. 3 at ¶ 3).  As of November 4, 2010, all of Debtor's outstanding parking fines, penalties, and interest were classified as "in judgment" (*id.* at ¶ 4).

why a "hold" was never placed on Debtor's account.  Yet it is nonetheless clear that any tow by a City Marshal resulting from an inadvertent omission by DOF did not represent a malicious attempt by the City to violate the automatic stay and certainly was not undertaken in bad faith. (*See id.* at ¶ 19.)  To the contrary, despite this unfortunate confluence of circumstances, DOF and the City of New York take the automatic stay very seriously (*id.* at ¶ 20).  The January 6, 2006 towing of Debtor's 1992 Subaru was merely a reflection of an unintentional lack of information in the DOF computer system (*id.*).

Once Debtor apprised DOF of the pending bankruptcy case, DOF immediately took steps to initiate a "hold" on any further collection action by DOF and to release the 1992 Subaru (*id.* at ¶ 21).  DOF's records show that Debtor obtained a release of the 1992 Subaru on January 24, 2006, and that all towing and storage charges assessed in connection with this tow were completely abated (*id.*).  Importantly, DOF's records indicate that DOF took no further action with regard to the 1992 Subaru following that date (*id.* at ¶ 22).  In fact, according to such records, the file relating to the January 6, 2006 tow was closed shortly thereafter—on or about January 30, 2006 (*id.*).  DOF's records indicate that DOF never auctioned or sold Debtor's 1992 Subaru at any point following the Petition Date (*id.* at ¶ 23).  Indeed, DOF's records do not reflect any further information regarding the impoundment or sale of the 1992 Subaru following its release from the City Marshal's possession (*see id.* at ¶¶ 22-23).

The third and final towing of Debtor's 1992 Subaru took place on January 24, 2006. Aside from the information reflected in the NYPD's Auction Bill of Sale, the only other information regarding the handling of the 1992 Subaru is set forth in a series of computer printouts obtained from the NYPD's Parking Enforcement District, which were created and stored in the ordinary course of business, and located by the NYPD in connection with its own

investigatory efforts in response to the Debtor's Second Motion (*see* Docket No. 284 at

Exhibit 6; copies of the Auction Bill of Sale and the referenced computer printouts are also

annexed hereto as the City's Exhibit "4").

A review of the NYPD's computer printouts reveals that at 1:40 p.m. on January 24,

2006, the 1992 Subaru was cited for being illegally parked in a "No Standing" zone, was towed

from its location in front of 35 East 30th Street in Manhattan, and was subsequently impounded

by the NYPD at Pier 76 (*see generally* Ex. 4).  This information is consistent with the

information set forth on the eleventh and final parking summons issued with respect to the 1992

Subaru (*see* Docket No. 284, Exhibit 4 at 11).  Thereafter, on March 15, 2006, the 1992 Subaru

was transferred to an impound lot located at West 203rd Street and was eventually sold at

auction on March 22, 2006 for the sum of $475.00 (*see* Ex. 4).  That towing, which was proper

under the circumstances, and the subsequent erroneous sale of the 1992 Subaru at auction, form

the primary basis for Debtor's appeal from the Orders of the bankruptcy court below.

<u>**ARGUMENT**</u>

**I.     PARKING FINES AND PENALTIES
ARE       NONDISCHARGEABLE       DEBTS
PURSUANT   TO   THE   UNAMBIGUOUS
LANGUAGE OF 11 U.S.C. § 523(a)(7).**

Debtor's first argument on appeal is that all of his pre-petition parking fines and

penalties, stemming from twenty-five separate parking violations, should have been discharged

in connection with his chapter 7 case notwithstanding the plain language of 11 U.S.C.

§ 523(a)(7) (*see* App. Br. at 9-17).  Debtor's assertion is without merit.

As Debtor was notified at the time he was granted a discharge, certain debts are

nondischargeable under chapter 7 of the Bankruptcy Code (*see supra* at 3).  As is relevant here,

section 523 of the Code provides:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> . . .
>
> > (7) to the extent such debt is for <u>a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit</u> . . . .

(11 U.S.C. § 523[a][7] (emphasis supplied)).  Debtor does not claim that his parking fines and penalties are not "payable to and for the benefit of a governmental unit" (*see also* 11 U.S.C. § 101[27] (defining "governmental unit" as including a municipality)).  Rather, Debtor alleges that the fines and penalties stemming from his parking violations are not the type of fines and penalties Congress intended to be nondischargeable debts under the Bankruptcy Code.[6] According to Debtor, the Code silently distinguishes between criminal fines and penalties, and civil fines and penalties, such that only criminal fines and penalties are nondischargeable, while civil fines and penalties must be discharged as though they were plain vanilla consumer debts. (*See, e.g.*, App. Br. at 16.)

As evidence that the Code contemplates such a distinction, Debtor relies primarily on the United States Supreme Court cases *Kelly v. Robinson*, 479 U.S. 36 (1986), and *Empire Bonding Agency v. Lopes (In re Lopes)*, 339 B.R. 82 (Bankr. S.D.N.Y. 2006) (App. Br. at 12, 14 (citing cases)).  But each of these cases <u>only</u> addresses the dischargeability of a narrow subset of criminal fines and penalties (*see Kelly*, 479 U.S. at 38 (addressing the dischargeability of criminal restitution obligations imposed as a condition of probation); *Lopes*, 339 B.R. at 86-87 (addressing the dischargeability of a bail bond forfeiture that was deemed compensation for a pecuniary loss and accordingly, not covered by section 523(a)(7)).  Neither case in any way attempted to address the dischargeability of civil fines and penalties under section 523(a)(7),

---

[6] It must be noted that Debtor himself characterized DOF's claim as one for "Fines" in connection with his original Petition (*see* Docket No. 1, at Schedule F; *supra* at 2).  The parking summonses issued to Debtor each time he illegally parked his vehicles also refer to the sum owed as a "Fine" (*see generally* Docket No. 284, Exhibit 4).

much less the distinction advanced by Debtor on appeal (*id.*).  In short, Debtor's reliance on these cases is misplaced.  And, ironically, a third case cited by Debtor—*U.S. HUD v. Cost Control Mktg. & Sales Mgmt.*, 64 F.3d 920, 927-28 (4th Cir. 1995) (*see* App. Br. at 13)—only supports the City's position:

> The Supreme Court has given § 523(a)(7) a broad reading, and has held that it applies to all criminal and civil penalties, even those designed to provide restitution to injured private citizens. *Kelly v. Robinson*, 479 U.S. 36, 93 L. Ed. 2d 216, 107 S. Ct. 353 (1986) (criminal restitution obligation was not dischargeable); *Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 562, 109 L. Ed. 2d 588, 110 S. Ct. 2126 (1990) (stating that § 523(a)(7) applies to both criminal and civil fines).

(emphasis supplied).

Moreover, other courts in this State have already settled this matter—a fine and/or penalty for a parking violation is a "fine" or "penalty" under Code § 523(a)(7) and therefore nondischargeable (*see In re Busby*, 46 B.R. 15, 16 [Bankr. E.D.N.Y. 1984] ("such debts are not dischargeable in straight bankruptcy."); *In re Meltzer*, 11 B.R. 624, 625-26 [Bankr. E.D.N.Y. 1981] ("were Mr. Meltzer to file under Chapter 7 of the Code, he could not escape paying the judgment against him for parking violations."); *Johnson v. City of New York Department of Finance*, 2003 N.Y. Slip Op. 50837U [N.Y. App. Term, April 9, 2003] ("Contrary to plaintiff's contention, traffic fines are nondischargeable debts.")).  These cases remain good law.

In fact, bankruptcy courts around the United States appear to be in general agreement that fines imposed as a result of parking violations are nondischargeable under chapter 7 of the Code (*see In re Burkhardt*, 220 B.R. 837, 846 [Bankr. D.N.J. 1998] ("In a Chapter 7 case, the fines are generally excepted from discharge pursuant to section 523, while in the Chapter 13 arena, such fines are generally payable through a Chapter 13 Plan."); *Stevens v. Commercial Collection Serv. (In re Stevens)*, 184 B.R. 584, 586 [Bankr. W.D. Wash. 1995] ("traffic and parking fines are a

'fine or penalty' for purposes of Section 523(a)(7)."); *In re Gallagher*, 71 B.R. 138, 139 [Bankr. N.D. Ill. 1987] ("There is no doubt that parking fines are fines or penalties payable to and for the benefit of a governmental unit and . . . not to compensate the City for pecuniary loss."); *see also In re Taite*, 76 B.R. 764 [Bankr. C.D. Cal. 1987]; *In re Caggiano*, 34 B.R. 449 [Bankr. D. Ma. 1983]).

There is simply no meaningful distinction between "civil" and "criminal" fines and penalties when determining whether such debts are nondischargeable under the Code (*see* 11 U.S.C. § 523[a][7]).  The bankruptcy court agreed, and the decision that Debtor's parking fines and penalties are nondischargeable should be affirmed (*see* Ex. 1 at 2; *see also* Docket No. 296 at 12-13 (citing cases)).

## II.   THE BANKRUPTCY COURT'S CONCLUSION THAT DEBTOR'S 1992 SUBARU HAD A VALUE OF $750.00 WAS NOT CLEARLY ERRONEOUS AND MUST BE AFFIRMED.

Debtor next argues that the bankruptcy court's finding of fact as to the value of the 1992 Subaru was in error and should be increased from $750.00 to $1,000.00 (*see* App. Br. at 18-19). In support of that position, Debtor highlights the definition of "value" set forth in Code § 522, which is a section of the Code that primarily describes the federal exemptions available to certain debtors in bankruptcy cases initiated in other jurisdictions.[7]  Debtor claims that under such definition one must determine the value of property in a bankruptcy case as of a fixed date—the Petition Date (*see* App. Br. at 19 ("'value' means fair market value as of the date of the filing of the petition . . . .").  There is no basis for Debtor's claim.

While Code § 522(a)(2) does set forth a definition of the word "value", it also, by its own terms, limits the application of such definition to that section and that section alone: "(a) <u>In this</u>

---

[7] As is noted above, the federal exemptions do not apply in New York bankruptcy courts (*supra* at 3, n.3).

section— . . . . (2) 'value' means fair market value as of the date of the filing of the petition . . . ." (11 U.S.C. § 522[a][2] (emphasis supplied)).  Nothing elsewhere in the Code invokes this definition of "value" in the context of fixing an award of damages for a violation of the automatic stay under Code § 362.  And no definition of "value" is set forth in the general definitions applicable to bankruptcy cases under 11 U.S.C. § 101.  As a consequence, there is no reason to determine the extent of Debtor's loss regarding the value of the 1992 Subaru by reference to any date other than the date on which it was actually sold at auction.[8]

Moreover, Debtor ignores facts in the record when he states that, "the only evidence before the Court on the issue of the automobile's value was that submitted by Appellant" at the outset of his case (*see* App. Br. at 19 (highlighting the estimated value he attributed to his 1992 Subaru in his Schedule B)).  The City submitted the Auction Bill of Sale in opposition to Debtor's Second Motion, which demonstrated precisely what the 1992 Subaru was worth on March 22, 2006—$475.00 (*see* Docket No. 284 at Exhibit 6; *see also* Ex. 4).

Using the "clearly erroneous" standard required by Federal Rule of Bankruptcy Procedure 8013, there is no basis to disturb the bankruptcy court's finding (*see* Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . .")).  A finding of fact is clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed" (*In re Emmerling*, 223 B.R. 860, 863-64 [2d Cir. B.A.P. 1997], citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 [1985]; *In re Dill*, 163 B.R. 221, 224 [E.D.N.Y. 1994]).  "This standard plainly does not entitle a reviewing court to reverse

---

[8] Debtor's reference to Kelley Blue Book is equally unpersuasive as a basis to increase the value attributed to the 1992 Subaru.  Kelley Blue Book is only a useful guide for determining the value of an automobile when the condition of that automobile can be readily ascertained.  Debtor offered no evidence whatsoever as to the condition of the 1992 Subaru.

the finding of the trier of fact simply because it is convinced that it would have decided the case differently" (*Anderson*, 470 U.S. at 573).  "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently" (*id.* at 573-74).

Confronted with competing proposed values for the same vehicle, and left with no competent testimony regarding the condition of the vehicle at the time it was sold, the bankruptcy court had no choice but to exercise its own judgment and assign some value based on the evidence before it.  That is precisely what it did (*see* Docket No. 297, at 64-65).  There is nothing in the record that could leave this Court with a "definite and firm conviction" that an error was made requiring an <u>increase</u> of the damages award for the 1992 Subaru (*Emmerling*, 223 B.R. at 863-64).  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous" (*Anderson*, 470 U.S. at 574 [1985], citing *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 [1982]; *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 [1949]).

**III.   THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN IMPOSING PUNITIVE DAMAGES ON THE CITY ABSENT A FINDING THAT THE CITY VIOLATED THE AUTOMATIC STAY WITH MALICE OR IN BAD FAITH, BUT EVEN IF THE COURT DETERMINES THAT PUNITIVE DAMAGES ARE WARRANTED, IT WAS NOT CLEARLY ERRONEOUS FOR THE COURT TO FIX SUCH DAMAGES AT $250.00.**

Debtor next raises the propriety of the bankruptcy court's punitive damages award and claims that any punitive damages award should be much higher than the $250.00 that was already imposed (*see* App. Br. at 19-23).  As is set forth more fully below, since there was no

14

finding of malice or bad faith on the part of the City when it violated the automatic stay, and
since no such finding is supportable on the evidence presented in the record, the bankruptcy
court abused its discretion in the first instance in imposing punitive damages under 11 U.S.C.
§ 362(k)(1).  Nevertheless, even if the Court determines that an award of punitive damages was
appropriate under the circumstances, it was not clearly erroneous for the bankruptcy court to
conclude that $250.00 is an appropriate sum.

The bankruptcy court has discretion to assess punitive damages for a "willful" violation
of the automatic stay (*see* 11 U.S.C. § 362[k][1]; *see also In re Crawford*, 388 B.R. 506, 518
[Bankr. S.D.N.Y. 2008]).  A "willful" violation, however, does not require a specific intent to
violate the automatic stay.  Rather, the Second Circuit has embraced "the reasoning adopted by
the other circuits and conclude[d] that any deliberate act taken in violation of a stay, which the
violator knows to be in existence, justifies an award of actual damages. <u>An additional finding of</u>
<u>maliciousness or bad faith on the part of the offending creditor warrants the further imposition of</u>
<u>punitive damages</u>" (*In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 [2d Cir. 1990]
(emphasis supplied); *see also Bank of Am., N.A. v. Adomah (In re Adomah)*, 368 B.R. 134, 139
[S.D.N.Y. 2007] (upholding a bankruptcy court's decision not to award punitive damages in the
absence of a finding of malice or bad faith).  Yet "even callous disregard is an insufficient basis
upon which to award punitive damages because it does not rise to the level of bad faith or
maliciousness" (*see In re Adomah*, 368 B.R. at 139, citing *In re Layton*, 220 B.R. 508, 518
[Bankr. N.D.N.Y. 1998]).

The City does not dispute that Debtor's 1992 Subaru was towed and erroneously sold at
auction after the Petition Date, which, as a matter of law, constituted a "willful" violation of the
automatic stay (*see* Ex. 1 at 3).  And because of that, Debtor is entitled to actual damages as

provided for by statute (*see* 11 U.S.C. § 362[k][1]).  But the City's violation was not malicious or undertaken in bad faith.  The evidence in the record only discloses unintended errors and/or omissions by the City, the culmination of which unfortunately resulted in the sale of Debtor's 1992 Subaru (*see supra* at 6-9; *see also* Docket No. 284 at Exhibit 2; Ex. 3).  Still, the bankruptcy court did not suggest that the City's conduct was malicious or undertaken in bad faith (*see* Ex. 1; Docket Nos. 296, 297).  Indeed, it was not.  Accordingly, punitive damages are not warranted for the City's violation of the automatic stay.

Should the Court determine that an award of punitive damages is indeed an appropriate exercise of discretion, however, the sum of $250.00 imposed by the bankruptcy court is supportable under the circumstances—even under the standard advanced by Debtor, which has never been definitively adopted or uniformly applied in New York Courts, and which need not be applied in this case (*compare In re Wagner*, 74 B.R. 898 [Bankr. E.D. Pa. 1987] (first establishing the factors set forth *In re B. Cohen & Sons Caterers, Inc.*, 108 B.R. 482 [E.D. Pa 1989], and cited by Debtor) *with In re Adomah*, 368 B.R. 134, 139 [S.D.N.Y. 2007] (not discussing any of the factors); *see also In re Klein*, 226 B.R. 542, 545 [Bankr. D.N.J. 1998] (noting that *In re Wagner* "involved threats of physical harm so shocking that it was clear to the court that punitive damages must be awarded . . . [there], defendant, a creditor, burst into debtor's home and threatened 'to blow his brains out' in an effort to convince him to return trucks."); *see also* App. Br. at 24).  For example, the bankruptcy court could have easily concluded that the nature of the City's conduct and the City's motives under the first and third factors did not rise to a level warranting a larger punitive damages award (*see generally In re Wagner*, 74 B.R. at 898; App. Br. at 24).[9]  Or, the bankruptcy court could have concluded under

---

[9] The four *Wagner* factors are: "(1) the nature of the defendant's conduct; (2) the defendant's ability to pay;(3) the motives of the defendant; and (4) any provocation by the debtor" (*In re B. Cohen & Sons*, 108 B.R. at 487).

the fourth factor that, in accruing more than twenty-five parking violations pre-petition and by continuing to incur parking violations post-petition, the Debtor provoked some of the confusion that ultimately led to the City's violation of the automatic stay (*see id.*).

Regardless of the reasons underlying the bankruptcy court's decision as to the amount of the punitive damages award, the fact remains that nothing in the record is sufficient to leave this Court with "the definite and firm conviction that a mistake has been committed" so as to warrant an increase in the punitive damages award (*see In re Emmerling*, 223 B.R. 860, 863-64 [2d Cir. B.A.P. 1997], citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 [1985]; *In re Dill*, 163 B.R. 221, 224 [E.D.N.Y. 1994]).  And since the "account of the evidence is plausible in light of the record viewed in its entirety," it may not be reversed on appeal (*Anderson*, 470 U.S. at 573-74).

**IV.   THE BANKRUPTCY COURT APPLIED THE PROPER STANDARD IN EVALUATING DEBTOR'S MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9023, AND IT WAS NOT AN ABUSE OF DISCRETION FOR THE BANKRUPTCY COURT TO DENY DEBTOR'S MOTION UPON FINDING THAT DEBTOR FAILED TO SATISFY SUCH STANDARD.**

Debtor's remaining argument of relevance to the City is that the bankruptcy court erred in denying his Motion to Reargue (*see* App. Br. at 23-26).  As is set forth more fully below, the bankruptcy court's decision to deny Debtor's Motion to Reargue is supported by the facts and the law, and should be affirmed (*see* Ex. 2).

By motion filed June 16, 2011, Debtor sought permission, pursuant to Federal Rule of Bankruptcy Procedure 9023, to present additional testimony with respect to the amount of his damages awards (*see generally* Docket No. 295 at 1; *see also* Fed. R. Bankr. P. 9023).  The only reason Debtor offered in support of the motion was his claim that he did not have an adequate

opportunity to present testimony on the full extent of such damages at the June 6, 2011 evidentiary hearing (*see* Docket No. 295 at ¶¶ 3, 7).  On appeal, Debtor attempts to amplify that claim by stating that he was actually "<u>prevented</u> from presenting testimony of the full list of damages Appellant alleges he sustained . . . ." in addition to being "<u>denied the opportunity</u> to argue and suggest an amount that the Court should award" (App. Br. at 25-26 (emphasis supplied)).  Debtor identifies a single statement by Judge Drain as evidence for his assertions: "All right. So I – you all can sit down now" (Docket No. 297 at 53, line 22; App. Br. at 24). According to Debtor, that statement effectively ended the hearing and foreclosed his ability to submit any other evidence in his possession.  None of Debtor's assertions are supportable.

To the contrary, Debtor had every opportunity to submit any and all evidence he had in his possession during the course of the proceedings and neither Judge Drain nor any other party prevented him from doing so.  This fact is most clearly supported by the transcript of the June 6, 2011 evidentiary hearing, which lasted more than an hour and a half and consisted almost entirely of a discussion between Judge Drain and Debtor (*see generally* Docket No. 297). What's more, even after Judge Drain had concluded his ruling from the bench, both Debtor and counsel to the City Marshal actually succeeded in bringing additional issues to the court's attention, without any difficulty in doing so (*see id.* at 66-68).  For example, the following exchange took place:

> MR. BACE: Your Honor, when we were here in November you had denied my argument about the non-dischargeability, but you said that you would incorporate that finding into --
>
> THE COURT: Oh, that's right.
>
> MR. BACE: -- this order.
>
> THE COURT: Yes. I'm sorry. You're exactly right. The order should also provide . . . .

(*id.* at 66-67, lines 22-25, 1-3).  There is no credible basis for Debtor's claim that he was prevented from, denied the opportunity, or was otherwise unable to raise any other unresolved issues at that time as well.

Moreover, the June 6, 2011 evidentiary hearing was not the Debtor's only opportunity to present evidence of his damages.  Debtor was granted no less than three other hearings during which he could have submitted such evidence and made whatever arguments he deemed appropriate (*see* Docket Nos. 267, 268, 274, 296).  Debtor was also provided the opportunity in written form, through two separate motions, to raise with particularity the nature and the amount of the damages he now claims he was not allowed to prove (*see* Docket Nos. 253, 283).  Yet even as Debtor persists with these arguments on appeal, he has still never attempted to describe the precise nature of the additional damages he believes he sustained, the amount of any additional damages that should be awarded, or the quantity or quality of the evidence he intended to offer in support of his claim for additional damages.  Debtor simply asserts that he should be afforded yet another opportunity to submit evidence, without offering any legal basis for doing so (*see* App. Br. at 23-26).  Debtor's assertions cannot survive scrutiny under the standard applicable to a motion under Federal Rule of Bankruptcy Procedure 9023.

"[M]otions for rehearing and motions for a new trial are 'addressed to the sound discretion of the court; and based . . . . upon the ground of newly discovered evidence, the indispensable condition of their being granted [is] that the failure to discover the evidence in time for trial was not due to a lack of diligence on the part of the applicant'" (*see In re Crozier Bros., Inc.*, 60 B.R. 683, 688 [Bankr. S.D.N.Y. 1986], quoting *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 420-21 [1923]).  "To succeed on a motion for reargument, a litigant must show that the Court 'overlooked controlling decisions or factual matters that might

19

materially have influenced its earlier decision  . . . . [or] the movant must demonstrate the need to correct a clear error or prevent manifest injustice'" (*see In re Lyondell Chem. Co.*, 2009 Bankr. LEXIS 724 at *2 [Bankr. S.D.N.Y. 2009], quoting *In re Asia Global Crossing, Ltd.*, 332 B.R. 520, 524 [Bankr. S.D.N.Y. 2004]); *see also* Ex. 2 at 1-2).  "The rule permitting reargument is strictly construed to avoid repetitive arguments on issues that the court has already considered." (*In re Lyondell Chem.*, 2009 Bankr. LEXIS 724 at *2, quoting *In re Best Payphones, Inc.*, 2008 Bankr. LEXIS 2555, at *7 [Bankr. S.D.N.Y. 2008]).

Debtor has not identified any newly-discovered evidence that warrants granting his Motion to Reargue (*see In re Crozier Bros., Inc.*, 60 B.R. at 688).  Nor has Debtor alleged that "the Court 'overlooked controlling decisions or factual matters that might materially have influenced its earlier decision'" or identified any specific "need to correct a clear error or prevent manifest injustice'" (*see In re Lyondell Chem.*, 2009 Bankr. LEXIS 724 at *2, quoting *In re Asia Global Crossing*, 332 B.R. at 524).  Rather, as Judge Drain suggested, Debtor's Motion to Reargue is most appropriately characterized as an attempt to re-litigate "issues that the court has already considered," which is no basis at all for granting the motion (*In re Lyondell Chem.*, 2009 Bankr. LEXIS 724 at *2; *see also* Ex. 2).

In fact, as Judge Drain held: (i) "the Court considered all of the Debtor's written submissions, none of which attempted to quantify any intangible damages, before issuing its ruling"; (ii) "the Court fully considered the Debtor's possible damages in awarding punitive, as well as compensatory, damages"; and (iii) "the Debtor, although pro se, has extensive experience in federal court" [10] and "the hearing record is clear that the Court gave the parties, including the Debtor, a full and fair opportunity to submit additional evidence at the evidentiary hearing on

[10] Although Debtor now contests this fact on appeal (App. Br. at 24), he has previously stipulated that he "is a law school graduate and sophisticated party" in connection with a prior settlement agreement with the Chapter 7 Trustee, which was "So Ordered" by the bankruptcy court (Docket No. 225 at 7, n.6).

June 6, 2011."  Accordingly, the bankruptcy court determined, "Debtor's failure to present evidence of quantifiable intangible, or pain and suffering, damages before the issuing of the Court's bench ruling is not a basis upon which the Motion can be granted."  (*See* Ex. 2 at 2.)

Debtor has not identified any grounds in his motion or in his brief on appeal that would satisfy the legal standard applicable to a motion under Federal Rule of Bankruptcy Procedure 9023.  In light of Debtor's failure to offer any such grounds, the bankruptcy court did not abuse its discretion in denying Debtor's Motion to Reargue and the court's Order should be affirmed.

## <u>CONCLUSION</u>

For the foregoing reasons, Appellees the City of New York Department of Finance and the New York City Police Department respectfully request that the District Court issue an Order: (i) either affirming or modifying the Orders of the bankruptcy court to the extent set forth herein; (ii) rejecting Debtor's arguments in all respects; and (iii) granting such other and further relief as the Court deems just and proper under the circumstances.

Dated:      New York, New York
            January 19, 2012

                                        MICHAEL A. CARDOZO
                                        Corporation Counsel of the
                                          City of New York
                                        Attorney for the City of New York
                                          Department of Finance and the
                                          New York City Police Department
                                        100 Church Street, Room 5-310
                                        New York, New York 10007
                                        Tel.: (212) 788-1172
                                        Email: jowolf@law.nyc.gov


                              By:     /s/ Joshua M. Wolf_____
                                           Joshua M. Wolf
                                        Assistant Corporation Counsel

21