UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

In re WILLIAM CHARLES BACE,          :

----------------------------------X

WILLIAM CHARLES BACE,                :      11 Civ. 6065 (PAC)(HBP)

                    Appellant,       :      REPORT AND
                                            RECOMMENDATION
        -against-                    :

TRUSTEE ROY BABITT, et al.,          :

                    Appellees.       :

----------------------------------X

          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE PAUL A. CROTTY, United States

District Judge,


I.   Introduction


          By an amended Notice of Appeal dated August 3, 2011

(Docket Item 3), William Charles Bace ("Appellant") appeals from

two Orders, Docket Nos. 299 and 300,[1] entered by the Honorable

Robert D. Drain, United States Bankruptcy Judge, dated June 28,

2011 in In re William Charles Bace, Case No. 05-42446.

---

          [1]References to "Docket No. ___" refer to the docket of the
United States Bankruptcy Court for the Southern District of New
York in In re William Charles Bace, Case No. 05-42446.

Appellees, the City of New York Department of Finance ("DOF") and the New York City Police Department ("NYPD") (collectively, the "City"), oppose the appeal (Docket Item 12). Appellee New York City Marshal Jeffrey S. Rose adopts the arguments made by the City in its opposition papers (Docket Item 14). Finally, appellee Roy Babitt, Esq., in his capacity as Chapter 7 Trustee ("Trustee"), has moved by Notice of Motion dated January 19, 2012 to dismiss the appeal as against him (Docket Item 9).

For the reasons set forth below, I respectfully recommend that (1) the Bankruptcy Court's decision be affirmed in all respects and (2) the Trustee's motion to dismiss be granted.

## II. Facts

### A. Relevant Bankruptcy Proceedings

On October 16, 2005, appellant filed a Chapter 13 Voluntary Petition ("Petition") in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") (Docket No. 1). Appellant provided the following relevant information in his petition: (1) on Schedule B entitled "Personal Property," he reported that he owned a 1992 Subaru with an alleged market value of $1,000.00 (Docket No. 1, Schedule B), (2) on Schedule C entitled "Property Claimed as Exempt," he listed

2

the same 1992 Subaru (Docket No. 1, Schedule C) and (3) on Schedule F entitled "Creditors Holding Unsecured Nonpriority Claims," he listed a claim for "fines" owed to "NYC Parking Fines P.O. Box 3670 NY NY 10008" in the amount of $2,228.00 (Docket No. 1, Schedule F).

On March 9, 2006, the Bankruptcy Court converted appellant's Chapter 13 case to a Chapter 7 case (Docket No. 13). On March 13, 2006, Roy Babitt, Esq. was appointed Chapter 7 Trustee (Docket No. 18).

The DOF filed a proof of claim on May 31, 2006 in the amount of $3,800.98 for unpaid parking fines, including penalties and interest (see Docket No. 284 at 6; Brief of Appellees the City of New York Department of Finance and the New York City Police Department, dated Jan. 19, 2012 ("Appellees' Brf.") (Docket Item 12), 5-6). The DOF amended its proof of claim on November 7, 2008 to seek a total of $4,123.46, reflecting updated penalties and interest owed on the unpaid parking fines (see Docket No. 284 at 6; Appellees' Brf. at 5-6).

On May 7, 2009, appellant was granted a discharge pursuant to 11 U.S.C. § 727 (Docket No. 249). A form attached to the Discharge Order entitled "Explanation of Bankruptcy Discharge in a Chapter 7 Case" noted that some debts are not dischargeable,

including "[d]ebts for most fines [and] penalties . . . . " (Docket No. 249 at 2).

By motion dated July 9, 2009, appellant argued that the DOF willfully violated the automatic stay imposed pursuant to 11 U.S.C. § 362 on a number of occasions by wrongfully seizing, impounding, and, ultimately, selling his 1992 Subaru to satisfy the pre-petition parking fines, penalties and interest (Docket No. 253 at ¶¶ 8-21).  Appellant also contended that the DOF willfully violated the automatic stay and the discharge injunction entered in his case pursuant to 11 U.S.C. § 524 by wrongfully seizing and impounding his 1997 Subaru -- which he had bought as a replacement car for the 1992 Subaru that had been sold -- in order to satisfy the balance of the aforementioned debts (Docket No. 253 at ¶¶ 22-25).

On or about September 24, 2010, appellant re-filed his motion to include evidence of an Auction Bill of Sale for the 1992 Subaru (Docket No. 283) ("First Motion").  The Auction Bill of Sale disclosed that the 1992 Subaru had been sold by the NYPD at an auction on March 22, 2006 for $475.00.  Appellant also requested compensatory and punitive damages for the City's allegedly willful violation of the automatic stay (see Docket Nos. 282 and 283).

Judge Drain held hearings in connection with appellant's motion on November 23, 2010 and June 6, 2011 (see Docket Nos. 296 and 297).  Following the June 6, 2011 hearing, appellant filed a motion to re-open the hearing, requesting that he be permitted "to present additional testimony solely on the issue of damages" because he did not have "an opportunity [during the hearing] to discuss in detail . . . [his] intangible damages . . . including, but not limited to, pain and suffering, emotional distress, loss of use of automobile, inconvenience, etc." (Docket No. 295 at ¶ 7) ("Second Motion").

On June 28, 2011, Judge Drain issued the two written Orders which are the subjects of this appeal.  In the first Order (Docket No. 299), which addressed appellant's First Motion, Judge Drain held the following:  (1) appellant's debts to the DOF were not dischargeable pursuant to Section 523(a)(7) of the Bankruptcy Code, and, thus, the City and City Marshal Rose did not violate the discharge injunction entered in appellant's case; (2) appellant's 1997 Subaru was not subject to an exemption under Section 522 because it was neither property of the estate pursuant to section 541(a) nor was it purchased with proceeds of estate property; (3) the City's actions with respect to appellant's 1992 Subaru constituted a willful violation of the automatic stay, and, as a result, appellant was entitled to receive compensatory

damages pursuant to Section 362(k)(l) against the City and City Marshal Rose in the amount of $750.00 for the value of the auctioned 1992 Subaru and $65.00 for out-of-pocket expenses and (4) appellant was entitled to receive punitive damages pursuant to Section 362(k)(1) against the City only in the amount of $250.00.

In the second Order (Docket No. 300), which addressed appellant's Second Motion, Judge Drain denied appellant's request to present additional testimony on the issue of "intangible damages" because (1) he had considered all of appellant's written submissions, none of which identified the "intangible damages" being sought, (2) appellant, although proceeding pro se, had "extensive experience in federal court," and, in any event, the record was clear that the parties had been given "a full and fair opportunity to submit additional evidence at the evidentiary hearing on June 6, 2011" and (3) he had fully considered appel-lant's possible damages in awarding him compensatory and punitive damages.

B.   The Present Appeal

Appellant timely appealed from Judge Drain's Orders dated June 28, 2011 (see Docket Item 1).  In his Amended Notice of Appeal dated August 3, 2011 (Docket Item 3), appellant raised

eleven issues, although many of the issues overlap with one
another.

Appellant's brief, however, raises only four issues:
(1) whether appellant's prepetition indebtedness to the DOF is
dischargeable, (2) whether Judge Drain properly determined
appellant's compensatory and punitive damages awards, (3) whether
Judge Drain properly denied appellant's motion to re-open the
hearing on damages and (4) whether Judge Drain properly denied
appellant's request that the Chapter 7 Trustee provide him with
assistance "regarding his claim[s] of exemption and lien avoid-
ance [sic]" (see Appellant's Brief, dated Dec. 19, 2011 ("Appel-
lant's Brf.") (Docket Item 8), 7).

The City contends, among other things, that appellant
has abandoned all issues raised in his Amended Notice of Appeal,
but not addressed in his appellate brief (see Appellees' Brf. at
1 n.1).

III. Analysis

A.   Abandoned Issues

The City is correct that appellant has abandoned
certain issues that he raised in his Amended Notice of Appeal.
An appellant may abandon an issue that is raised on appeal by

failing to address it in his appellate brief.  <u>See</u> <u>In re Leslie</u>
<u>Fay Co., Inc.</u>, 222 B.R. 718, 721 n.3 (S.D.N.Y. 1998) (Rakoff,
D.J.) ("Although appellants also appeal the Bankruptcy Court's
order denying them compensation for professional services and
expenses, they make nary an argument on the topic in their
opening brief, and have therefore waived the issue entirely."),
<u>aff'd</u>, 182 F.3d 899 (2d Cir. 1999); Fed.R.Bankr.P. 8010(a)(1)(E)
(an appellant's brief shall contain an argument section, which in
turn, "shall contain the contentions of the appellant with
respect to the issues presented, and the reasons therefor, with
citations to the authorities, statutes and parts of the record
relied on."); <u>see</u> <u>also</u> <u>In re Vargas Realty Enter., Inc.</u>, 440 B.R.
224, 241-42 (S.D.N.Y. 2010) (Sullivan, D.J.); <u>Axis Reinsurance</u>
<u>Co. v. Bennett</u>, 07 Civ. 7924 (GEL), 07 Civ. 9420 (GEL), 07 Civ.
9842 (GEL), 07 Civ. 10302 (GEL), 07 Civ. 9843 (GEL), 2008 WL
2600034 at *1 (S.D.N.Y. June 27, 2008) (Lynch, then D.J., now
Cir. J.).  Accordingly, I address only the four issues set forth
in appellant's brief.

> B.   Applicable
>      <u>Legal Principles</u>

District courts have appellate jurisdiction to hear
appeals of bankruptcy court rulings.  28 U.S.C. § 158(a)

("[D]istrict courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and,] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges.").  Fed.R.Bankr.P. 8013 further provides that the district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."

The bankruptcy court's findings of fact are reviewed for clear error.  In re Bayshore Wire Prod. Corp., 209 F.3d 100, 103 (2d Cir. 2000); see Fed.R.Bankr.P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses."); see also In re Hyman, 502 F.3d 61, 65 (2d Cir. 2007); In re DeTrano, 326 F.3d 319, 321 (2d Cir. 2003).  "'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  Dist. Lodge 26, Int'l. Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Tech. Corp., 610 F.3d 44, 51 (2d Cir. 2010), quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

9

The bankruptcy court's legal conclusions are reviewed
de novo.  In re Bayshore Wire Prod. Corp., supra, 209 F.3d at
103; see also In re Hyman, supra, 502 F.3d at 65; In re DeTrano,
supra, 326 F.3d at 321.

    C.    Application of the
             Foregoing Principles
             to the Present Appeal

        1.    Dischargeability of Unpaid Parking
                Fines, Penalties and Interest

Appellant first argues that Judge Drain erred in
determining that the unpaid parking fines, penalties and interest
that he owed to the DOF were non-dischargeable debts pursuant to
11 U.S.C. § 523(a)(7).  The crux of his argument is that there is
a distinction between criminal and civil fines and penalties,
such that only the former are not dischargeable pursuant to
Section 523(a)(7).  Thus, appellant contends that because his
debts to the DOF -- i.e., parking fines, penalties and interest
-- are civil in nature, they are dischargeable and do not fall
within the ambit of Section 523(a)(7) (see Appellant's Brf. at 9-
17).

The City contends that appellant's argument is without
merit because "[t]here is simply no meaningful distinction
between 'civil' and 'criminal' fines and penalties when determin-

ing whether such debts are nondischargeable under the [Bankruptcy] Code" (Appellees' Brf. at 12).

Because there are no factual issues in dispute and resolution of this issue concerns the applicability of Section 523(a)(7), I review Judge Drain's determination de novo. See In re Gelb, No. 95-CV-4725 (FB), 1998 WL 221366 at *2 (E.D.N.Y. Apr. 29, 1998) (applying de novo standard of review where "[t]he single issue presented on [] appeal [was] whether [a] restitution order [was] non-dischargeable pursuant to 11 U.S.C. § 523(a)(7)."); accord In re Sandoval, 541 F.3d 997, 1000 (10th Cir. 2008) ("Because this case requires us to determine the meaning of 11 U.S.C. § 523(a)(7), we review the bankruptcy court's decision de novo." (internal quotation marks and citation omitted)); In re Warfel, 268 B.R. 205, 209 (B.A.P. 9th Cir. 2001) (reviewing de novo "[a] mixed question of law and fact [which] occurs when the historical facts are established; the rule of law is undisputed, i.e., the elements of § 523(a)(7); and the issue is whether the facts satisfy the legal rule." (internal quotation marks and citation omitted)).

At the hearing held on November 23, 2010, Judge Drain found that appellant's debts to the DOF for unpaid parking tickets, penalties and interest were non-dischargeable pursuant to Section 523(a)(7) because they were (1) fines payable to or

for the benefit of a governmental unit and (2) not compensation
for actual pecuniary loss (Docket No. 296 at 12).   Judge Drain
then rejected appellant's arguments that Section 523(a)(7)
distinguishes between criminal and civil debts, stating that
"[t]he case law and commentary on this issue are clear as is the
statute . . . . the discharge exception extends to both catego-
ries [i.e., criminal and civil] liabilities" (Docket No. 296 at
12-13) (internal quotation marks and citation omitted).   On the
basis of the foregoing, Judge Drain held that appellant's debts
to the DOF were non-dischargeable pursuant to Section 523(a)(7).

Judge Drain's determination was correct.   Section
523(a) sets forth a list of exceptions to a debtor's discharge
pursuant to Section 727 of the Bankruptcy Code.   Specifically,
Section 523(a)(7) provides:

> A discharge under section 727 . . . does not discharge
> an individual debtor from any debt -- . . . . (7) to
> the extent such debt is for a fine, penalty, or forfei-
> ture payable to and for the benefit of a governmental
> unit, and is not compensation for actual pecuniary loss
> . . . .

11 U.S.C. § 523(a)(7).   Contrary to appellant's contention, this
section does not distinguish between criminal and civil fines and
penalties.   See 4 Collier on Bankruptcy ¶ 523.13[2] (Alan N.
Resnick & Henry J. Sommer eds., 16th ed. 2012) ("The text of
[S]ection 523(a)(7) does not distinguish between criminal and

civil fines [and] penalties . . . . "); see also In re Fucilo, No. 00-36261 (CGM), 2002 WL 1008935 at *10 (Bankr. S.D.N.Y. Jan. 24, 2002) (Morris, B.J.) ("The Supreme Court has given § 523(a)(7) a broad reading, and has held that it applies to all criminal and civil penalties . . . . ") (collecting cases); accord In re Poule, 91 B.R. 83, 87-88 (B.A.P. 9th Cir. 1988); In re Wolfson, 261 B.R. 369, 375-76 (Bankr. E.D.N.Y. 2001); In re Caggiano, 34 B.R. 449, 450-51 (Bankr. D. Mass. 1983).

Moreover, parking fines have repeatedly been found to be non-dischargeable debts pursuant to Section 523(a)(7). See In re Busby, 46 B.R. 15, 16 (Bankr. E.D.N.Y. 1984) ("Only the Parking Violations Bureau might have ultimately received more under Chapter 7 than under Chapter 13 since such debts are not dischargeable in straight bankruptcy [pursuant to] 11 U.S.C. § 523(a)(7)."); In re Meltzer, 11 B.R. 624, 625 (Bankr. E.D.N.Y. 1981) ("[W]ere Mr. Meltzer to file under Chapter 7 . . . he could not escape paying the judgment against him for parking viola-tions, nor obtain a discharge from the remainder of his debts."); Johnson v. City of New York Dep't of Fin. Admin. Attorney Bankr., 2003 WL 21049599 at *1, 2003 N.Y. Slip Op. 50837(U) (N.Y. Sup. App. Term. Apr. 9, 2003) ("Contrary to plaintiff's contention, traffic and parking fines are nondischargeable debts."); accord In re Burkhardt, 220 B.R. 837, 846 (Bankr. D. N.J. 1998); In re

13

Stevens, 184 B.R. 584, 586 (Bankr. W.D. Wash. 1995); In re
Gallagher, 71 B.R. 138, 139 (Bankr. N.D. Ill. 1987); In re
Caggiano, supra, 34 B.R. at 450-51.

On the basis of the foregoing, Judge Drain's determina-
tion that appellant's debts to the DOF are non-dischargeable
pursuant to Section 523(a)(7) should be affirmed.

      2.    Whether the Bankruptcy Court
           Properly Assessed Appellant's Damages

Appellant next argues that Judge Drain erred
in assessing compensatory and punitive damages for the City's
willful violation of the automatic stay.

      a.   Compensatory Damages

Appellant contends that Judge Drain erred in fixing the
value of his 1992 Subaru at $750.00 instead of $1,000.00.
Specifically, appellant states:

> Judge Drain erred as a matter of law in valuing
> [a]ppellant's Subaru at $750.00, when the only evidence
> before the Court on the issue of the automobile's value
> was that submitted by [a]ppellant.  The sole proof
> introduced was that the value was between $1,720 -
> $1,045 [sic] [according to the "Kelley Blue Book"], and
> as [a]ppellant attributed a value of $1,000 in his
> initial schedules [to the 1992 Subaru], the [a]ppellant
> is limited from claiming [sic] a value in excess of
> $1,000.00.

(Appellant's Brf. at 19).  Appellant also (1) contends that
$475.00 -- the price obtained for the 1992 Subaru at the NYPD
auction -- does not establish its fair market value because it
was a forced sale and (2) generally quotes the following language
from 11 U.S.C. § 522 of the Bankruptcy Code:  "value" means the
"'fair market value as of the date of the filing of the petition
. . . . '" (Appellant's Brf. at 18-19, quoting in part 11 U.S.C.
§ 522).

        The City contends that Section 522 is inapplicable here
because that section only concerns federal exemptions that are
not applicable to appellant's bankruptcy case (see Appellees'
Brf. at 12-13 & n.7).  The City also contends that appellant is
incorrect in asserting that he was the only party to submit
evidence of the 1992 Subaru's value because the City submitted
the Auction Bill of Sale for $475.00 during the hearing on
damages (Appellees' Brf. at 13).  Thus, the City argues that,
under a "clearly erroneous" standard of review, the Bankruptcy
Court's determination as to the 1992 Subaru's value was proper
because the Court was "[c]onfronted with competing proposed
values . . . and . . . no competent testimony regarding the
condition of the vehicle at the time [that] it was sold" (Appel-
lees' Brf. at 13-14).

"A bankruptcy court's decision regarding the amount of damages is a factual finding and will not be disturbed unless the finding is clearly erroneous."  Ball v. A.O. Smith Corp., 321 B.R. 100, 110 (N.D.N.Y. 2005), aff'd, 451 F.3d 66 (2006); see also In re Adomah, 368 B.R. 134, 137 (S.D.N.Y. 2007) (Sweet, D.J.); In re Louis Frey Co., Inc., 06 Civ. 7587 (RMB), 06 Civ. 7588 (RMB), 2007 WL 924206 at *7 (S.D.N.Y. Mar. 26, 2007) (Berman, D.J.); Collins v. Hi-Qual Roofing & Siding Materials, No. 02-CV-0921E(F), 02-CV-0922E(F), 2003 WL 23350125 at *6 (W.D.N.Y. Dec. 18, 2003); Matter of Fugazy Express, Inc., 124 B.R. 426, 430 (S.D.N.Y. 1991) (Duffy, D.J.).

In this case, the Bankruptcy Court held a hearing on the issue of damages on June 6, 2011.  In determining that the value of the 1992 Subaru was $750.00, the Bankruptcy Court stated:

> The parties dispute the market value of the car. The range is between the price derived at the auction, which is four hundred and seventy-five dollars, and the amount stated by Mr. Bace on his schedules, which was one thousand dollars.  Generally speaking, a full and fair auction does establish the value of a car, but given the Kelley Blue Book value of the car[,] I'm not satisfied that a price of less than half of that value in a police auction establishes the fair value of the car.
>
> I conclude that as between a willing buyer and a willing seller, the value of the car was seven hundred fifty dollars.

(Docket No. 297 at 64-65).

Here, appellant has not shown that the Bankruptcy Court's determination that the value of his 1992 Subaru was $750.00 is clearly erroneous.  "'The party seeking damages pursuant to § 362(h) has the burden of proving what damages were incurred and what relief is appropriate.'"[2] Ball v. A.O. Smith Corp., supra, 321 B.R. at 110, quoting In re Sucre, 226 B.R. 340, 349 (Bankr. S.D.N.Y. 1998) (Gonzalez, B.J.).

Appellant argues that he was the only party to submit evidence as to the 1992 Subaru's value, i.e., the Kelley Blue Book value, but his contention is simply wrong.  Appellant may not agree that the auction price the car achieved was, in fact, the fair market value of the car, but that does not mean that the City failed to offer competing evidence as to the car's value. In fact, it is clear from the hearing transcript that Judge Drain based his ultimate determination on the parties' competing proposed values (see Docket No. 297 at 64-65).

--------

[2]The provisions that are currently set forth in Section 362(k) were previously set forth in Section 362(h).  In this Report and Recommendation, I cite case law discussing Section 362(k), as well as case law discussing the prior Section 362(h), because there is no substantive difference between the two sections that is relevant to this bankruptcy appeal.  See In re Ebadi, 448 B.R. 308, 320 n.13 (E.D.N.Y. 2011).

Additionally, it is clear from the hearing transcript that the City conceded the value of the 1992 Subaru was at least $475.00 and appellant conceded that the value of the 1992 Subaru was not above $1,000.00 (see Docket No. 297 at 14).   Other than this range of proposed values, no other testimony or evidence was offered by either side concerning the value or condition of the 1992 Subaru.[3]

Finally, appellant's reference to the definition of "value" in Section 522 of the Bankruptcy Code is similarly unavailing.   While appellant appears to argue that this definition of value -- i.e., the fair market value as of the date the petition was filed -- supports valuing the 1992 Subaru at $1,000.00, the City is correct in its contention that Section 522 addresses federal bankruptcy exemptions and is inapplicable here.[4]   Additionally, the language of Section 522 expressly

---

[3]Appellant filed a motion to re-open the damages hearing held on June 6, 2011 (Docket No. 295).   This motion, however, did not address the actual value of the 1992 Subaru.   Instead, it dealt only with "intangible damages" (see Docket No. 295 at ¶ 3). Accordingly, this motion does not alter the analysis set forth above.

[4]"The Bankruptcy Code contains a set of federal exemptions and permits debtors to choose between either federal or state exemptions.   11 U.S.C. § 522(b)(1).   However, the Bankruptcy Code also permits individual states to 'opt-out' of the federal exemption scheme.   See e.g., In re Corio, 190 B.R. 498, 499 (Bankr. E.D.N.Y. 1995).   Pursuant to N.Y. Debt. & Cred. Law [] § 284, New York is one state that has opted-out from the federal
(continued...)

limits the applicability of the definition of "value" set forth therein to that section.  See 11 U.S.C. § 522(a) ("In this section -- . . . (2) 'value' means fair market value as of the date of the filing of the petition . . . . ").

Thus, on the basis of the foregoing, Judge Drain determined that it was reasonable to strike a balance between the competing proposed values; he did so by assigning a value to the car that was slightly more than halfway between the parties' respective positions.  I cannot say that Judge Drain's findings on this issue are unsupported, nor can I say that I am left with "with the definite and firm conviction that a mistake has been committed."  See Dist. Lodge 26, Int'l. Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Tech. Corp., supra, 610 F.3d at 51 (internal quotation marks and citation omitted).  Accordingly, Judge Drain's determination that the value of the 1992 Subaru was $750.00 should be affirmed.

b.   Punitive Damages

Appellant also asserts that Judge Drain erred in assessing only $250.00 in punitive damages against the City.

---

⁴(...continued)
exemption scheme."  In re Mims, 438 B.R. 52, 54 n.3 (Bankr. S.D.N.Y. 2010) (Glenn, B.J.).  Accordingly, Section 522 is inapplicable here.

Specifically, appellant argues that in determining the amount of punitive damages to award, Judge Drain (1) failed to consider the factors set forth in In re B. Cohen & Sons Caterers, Inc., 108 B.R. 482, 487 (E.D. Pa. 1989), (2) erred when he considered whether appellant had suffered emotional distress, (3) awarded punitive damages in an amount that is not sufficient to deter future wrongdoing and (4) erred when he declined to award punitive damages against City Marshal Rose (Appellant's Brf. at 22-23).

The City contends that it was an abuse of discretion for Judge Drain to award any punitive damages against it because he did not make an express finding that the City had violated the automatic stay with malice or in bad faith (Appellees' Brf. at 14-15). In the alternative, the City contends that Judge Drain's decision to award only $250.00 in punitive damages is not clearly erroneous (Appellees' Brf. at 15).

"A bankruptcy court's decision whether to award punitive damages is reviewed for an abuse of discretion." In re Sturman, 10 Civ. 6725 (RJS), 2011 WL 4472412 at *1 (S.D.N.Y. Sept. 27, 2011) (Sullivan, D.J.), citing In re Adomah, supra, 368 B.R. at 137. "A district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a

clearly erroneous factual finding, or (2) its decision -- though not necessarily the product of a legal error or a clearly erroneous factual finding -- cannot be located within the range of permissible decisions."  Zervos v. Verizon New York, Inc., 252 F.3d 163, 169 (2d Cir. 2001) (internal footnotes omitted).

The Honorable Richard J. Sullivan, United States District Judge, succinctly set forth the standards applicable to a punitive damages award under Section 362(k) in In re Sturman, supra, 2011 WL 4472412 at *5:

> Punitive damages are appropriate only for violations of the automatic stay that are "malicious [] or in bad faith."  In re Adomah, 368 B.R. at 139.  Indeed, "even callous disregard is an insufficient basis upon which to award punitive damages."  Id.  In determining whether a violation would justify the imposition of punitive damages, courts have looked to a variety of factors, including:  "(1) the nature of the [violator's] conduct; (2) the [violator's] ability to pay; (3) the [violator's] motives; . . . (4) any provocation by the debtor," and (5) "the [violator's] level of sophistication."  In re Crawford, 388 B.R. at 525. Moreover, even where punitive damages might be appropriate, the law is clear that "[t]he bankruptcy court has considerable discretion in granting or denying punitive damages."  In re Stinson, 128 F. App'x 30, 32 (9th Cir. 2005); see also In re Heghmann, 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004) (noting that the Bankruptcy Code does not specify a standard for punitive damages, "leaving it to the sound discretion of the bankruptcy court").  The goal of awarding punitive damages is primarily to deter violations of the automatic stay, and may be appropriate even if actual damages are minimal.  In re Crawford, 388 B.R. at 525.  Nevertheless, such determinations are properly left to the sound discretion of the Bankruptcy Court.

See also In re Crysen/Montenay Energy Co., 902 F.2d 1098, 1105
(2d Cir. 1990); In re Pachman, No. 09-37475, 2010 WL 1489914 at
*4 (Bankr. S.D.N.Y. Apr. 14, 2010) (Morris, B.J); In re Burkart,
No. 08-61077, 2010 WL 502945 at *6 (Bankr. N.D.N.Y. Feb. 9,
2010); In re Lukach, No. 805-89014-478, 2007 WL 1365436 at *6
(Bankr. E.D.N.Y. May 8, 2007).

 Appellant's first argument is that, in awarding puni-
tive damages, Judge Drain failed to consider the factors set
forth in In re B. Cohen & Sons Caterers, Inc., supra, 108 B.R. at
487, to wit, (1) the nature of the violator's conduct, (2) the
violator's ability to pay, (3) the violator's motives and (4) any
provocation by the debtor.  Appellant's argument, however, is
without merit.  Although these factors have been applied in a few
New York cases, see, e.g., In re Sturman, supra, 2011 WL 4472412
at *5 and In re Pachman, supra, 2010 WL 1489914 at *4, appellant
cites no authority from the Second Circuit or the United States
Supreme Court that requires a bankruptcy court to consider these
factors when awarding punitive damages pursuant to Section
362(k).  Morever, as already noted above, "even where punitive
damages might be appropriate, the law is clear that the bank-
ruptcy court has considerable discretion in granting or denying
punitive damages."  In re Sturman, supra, 2011 WL 4472412 at *5
(internal quotation marks and citations omitted).

In addition, notwithstanding the lack of any require-
ment that he do so, it is clear from the hearing transcript that
Judge Drain did consider the In re B. Cohen & Sons Caterers
factors.  Judge Drain first explored the nature of the City's
conduct and its motives concerning the repeated impoundment and
ultimate sale of appellant's 1992 Subaru (see generally Docket
No. 297 at 19-31).  After doing this, Judge Drain concluded that
appellees' conduct had impacted an important personal property
right of appellant and that such conduct warranted the imposition
of punitive damages (see Docket No. 297 at 63-64).  The City also
made a representation to Judge Drain that it would pay the full
damages award to appellant (see Docket No. 297 at 67-68).  Thus,
even if Judge Drain did not expressly reference In re B. Cohen &
Sons Caterers, his analysis substantially mirrored the factors
set forth therein, and, in any event, the Court ruled in appel-
lant's favor on the issue.

Appellant's second argument is that Judge Drain improp-
erly considered whether appellant had suffered emotional distress
in awarding punitive damages.  Specifically, appellant contends:

> Judge Drain erred as a matter of law when determining
> the amount of punitive damages assessed against Appel-
> lees.  He concluded that "I will not award any actual
> damages for [emotional distress damages] believing that
> any issue as to mental suffering is taken into account
> by the punitive damages . . . "  Appellant argues,
> however, that any emotional distress suffered by a

23

> debtor is a matter to be considered when determining the debtor's actual damages.  It is not a proper factor to be considered when determining punitive damages.

(Appellant's Brf. at 22).  The City does not address this aspect of appellant's argument.

The principal problem with appellant's argument is that it incorrectly assumes that he was entitled to recover any damages for mental anguish.  The City's seizure and sale of appellant's car in violation of the automatic stay was closely analogous to the common law tort of conversion.  However, "under New York law, . . . absent proof of malicious intent on the part of the defendant, a party cannot recover damages for mental anguish, humiliation or emotional distress caused by conversion of a chattel."  Bhattal v. Grand Hyatt-New York, 563 F. Supp. 277, 281 (S.D.N.Y. 1983) (Brieant, D.J.), citing Cauverien v. DeMetz, 20 Misc. 2d 144, 147, 188 N.Y.S.2d 627, 631 (Sup. Ct. N.Y. Co. 1959); see also Evans v. City of Chicago, Nos. 77 C 4119, 79 C 1939, 79 C 2493, 1985 WL 1157 at *1 (N.D. Ill. May 9, 1985) ("Under most states' laws, a plaintiff cannot recover for his mental suffering caused by an injury to his property, at least if the defendant has not maliciously intended to cause such mental suffering.").  Because there was no evidence that the City seized appellant's 1992 Subaru with the specific intent of causing injury to appellant, appellant was not entitled to any

24

damages for mental anguish.  Thus, to the extent that Judge Drain considered mental anguish in awarding punitive damages, any error actually worked in appellant's favor and does not provide a basis for reversal.

Additionally, to the extent that appellant's argument can be read to assert a claim for mental anguish damages as a result of the violation of the automatic stay, that argument must also be rejected.  Although the case law is unsettled on the matter, there is authority for the proposition that a debtor may, under appropriate circumstances, recover emotional distress damages for a creditor's willful violation of the automatic stay. See, e.g., In re Rackowski, Bankruptcy No. 10-61574, Adversary No. 10-80048, 2011 WL 7069457 at *3-*4 (Bankr. N.D.N.Y. June 14, 2011); In re Pachman, supra, 2010 WL 1489914 at *3; In re Adomah, 340 B.R. 453, 460 (Bankr. S.D.N.Y. 2006) (Gropper, B.J.). Appellant, however, did not present any evidence of such damages during the June 6, 2011 hearing.  He did not offer any evidence that the City's violation of the automatic stay had any impact on his mental well being.  Thus, regardless of how appellant frames his argument on appeal, he was not entitled to recover any damages for mental anguish.

Appellant's third argument is that the punitive damages award is not sufficient to deter future wrongdoing.  It is the

case that "[t]he goal of awarding punitive damages is primarily
to deter violations of the automatic stay, and may be appropriate
even if actual damages are minimal." In re Sturman, supra, 2011
WL 4472412 at *5.  However, again, an award of punitive damages
is a matter that is "properly left to the sound discretion of the
Bankruptcy Court." In re Sturman, supra, 2011 WL 4472412 at *5.
Moreover, "[i]n New York, bankruptcy courts often assess awards
of punitive damages that are reasonably proportionate to the
actual damages." In re Westridge, No. 07-35257, 2009 WL 3491164
at *4 (Bankr. S.D.N.Y. Oct. 23, 2009) (Morris, B.J.) (collecting
cases).  Here, Judge Drain awarded appellant the following
damages:  (1) actual damages in the amount of $815.00, which
represented the value of the 1992 Subaru ($750.00) and his out-
of-pocket expenses ($65.00) and (2) punitive damages in the
amount of $250.00 (Docket No. 297 at 64-65).  There is nothing
about Judge Drain's reasoning or his ultimate determination that
suggests the punitive damages award in this case is not reason-
ably proportionate to the compensatory damages award.

  Finally, appellant argues that Judge Drain erred in
concluding that City Marshal Rose was not liable for punitive
damages because he had not filed a proof of claim in the bank-
ruptcy case.  Specifically, appellant contends that Judge Drain
"conflated the issues of a punitive damages award pursuant to

§ 362 and § 106(b)" and "[p]unitive damages are indisputably assessable against Marshal Rose . . . as he is neither [the] 'government,' nor is he a salaried employee of the City of New York, the Department of Finance or any other branch of the City 'Government'" (Appellant's Brf. at 23).

I need not reach this aspect of appellant's argument. For the reasons set forth herein, I conclude that the amount of punitive damages awarded is reasonable and there can be no serious question that the City will pay the award of punitive damages. Under these circumstances, the issue of City Marshal Rose's personal liability is a matter of academic interest only, and resolving the issue would have no practical effect on appellant. Accordingly, on the basis of the foregoing, the punitive damages award in this case should be affirmed.

3.   Whether Judge Drain Properly
     Denied Appellant's Motion to
     Re-Open the Hearing on Damages

Appellant next argues that Judge Drain erred in denying his motion to re-open the hearing to permit appellant to submit additional evidence concerning damages. By motion dated June 13, 2011, appellant moved pursuant to Fed.R.Civ.P. 59, Fed.R.Bankr.P. 9023 and Local Fed.R.Bankr.P. 9023-1 to present additional testimony on the issue of "damages relating to pain and suffer-

ing/emotional distress, etc." based on the contention that he had
not been afforded an adequate opportunity to present such
evidence during the June 6, 2011 hearing (Docket No. 295 at ¶ 3).

Appellant argues the following on appeal:  (1) Judge
Drain did not warn him that the evidentiary portion of the June
6, 2011 hearing "was coming to [a] close," (2) Judge Drain's
decision should be "carefully scrutin[ized]" because denial of
the opportunity to fully testify on the issue of damages impli-
cates a "substantive right" and (3) during the June 6, 2011
hearing, appellant intended to testify on "intangible damages"
such as "the loss of use of [his] 1992 Subaru, the time [that he]
devote[d] to the issue of the wrongful towing [] and [] eventual
sale of his 1992 Subaru . . . [,] the DMV suspension of [his]
license/driving privileges as the result of [a]ppellee's [sic]
wrongful retention of [his] license plates [and] mental strain
and suffering . . . . " (Appellant's Brf. at 25-26).

The City contends that these arguments are without
merit because appellant had ample opportunity to give testimony
or submit other evidence as to his damages throughout the course
of the proceedings (Appellees' Brf. at 18).  The City points out
that appellant had been granted multiple hearings throughout his
bankruptcy case and that neither Judge Drain nor the City pre-
vented him from offering evidence on the matter (Appellees' Brf.

at 19).  Finally, the City contends that appellant has not, at any point, identified either the precise nature of the additional damages sought or described the evidence that he was precluded from offering (Appellees' Brf. at 19).  Thus, the City argues that Judge Drain did not abuse his discretion when he denied appellant's Second Motion (Appellees' Brf. at 19-21).

"The applicable standard of review with respect to a motion under Bankruptcy Rule[] 9023 . . . -- which make[s] Fed.R. Civ.P. 59(e) . . . applicable to bankruptcy proceedings -- is abuse of discretion." Key Mech. Inc. v. BDC 56 LLC, 01 Civ. 10173 (RWS), 2002 WL 467664 at *2 (S.D.N.Y. Mar. 26, 2002) (Sweet, D.J.), citing in relevant part McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983); see also Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 150 (2d Cir. 2008); In re BDC 56 LLC., 330 F.3d 111, 123 (2d Cir. 2003), abrogated on other grounds, see In re Zarnel, 619 F.3d 156 (2d Cir. 2010); In re Interpictures, Inc., 122 F.3d 1056, 1997 WL 416925 at *2 (2d Cir. July 25, 1997); Wechsler v. Hunt Health Sys., Ltd., 94 Civ. 8294 (PKL), 2004 WL 2210261 at *2 (S.D.N.Y. Sept. 30, 2004) (Leisure, D.J.).

Before setting forth the standards applicable to a motion made pursuant to Fed.R.Bankr.P. 9023 and Fed.R.Civ.P. 59, I address appellant's second argument on appeal because it implicates the standard of review to be applied here.  Specifi-

cally, appellant contends that a standard of "careful scrutiny," as opposed to abuse of discretion, should be applied to Judge Drain's denial of his Second Motion.  Appellant argues that reviewing courts should "give little or no deference" to a determination that "is determinative of a substantive right of a party, e.g., whether to dismiss a bankruptcy case as [] filed in bad faith . . . . " (Appellant's Brf. at 24).  Here, appellant asserts that his right to present complete testimony on the issue of damages is a "substantive right" (see Appellant's Brf. at 25).

Appellant's argument must be rejected.  First, as already noted above, the law in the Second Circuit is clear that the standard of review on appeal for motions made pursuant to Fed.R.Bankr.P. 9023 and Fed.R.Civ.P. 59 is abuse of discretion. The cases that appellant cites in his brief, with the exception of one Second Circuit case, are from other jurisdictions, and, therefore, I decline to follow them to the extent that they conflict with Second Circuit precedent.  Second, the single Second Circuit case that appellant cites -- Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc., 601 F.2d 48 (2d Cir. 1979) -- is factually inapposite.  Buffalo Courier-Express dealt with the grant or denial of a preliminary injunction, not an application to re-open a damages hearing.

Turning to the applicable legal principles, the Honor-
able Judge Robert W. Sweet, United States District Judge, suc-
cinctly set forth the standards applicable to a motion for
reconsideration made pursuant to Fed.R.Bankr.P. 9023 and
Fed.R.Civ.P. 59 in Key Mech. Inc. v. BDC 56 LLC, supra, 2002 WL
467664 at *2-*3:

> Bankruptcy Rule 9023 [] incorporates Fed.R.Civ.P.
> 59. Rule 59 provides:[5]
>
>> (a) Grounds.  A new trial may be granted to
>> all or any of the parties on all or part of
>> the issues . . . (2) in an action tried with-
>> out a jury, for any of the reasons for which
>> rehearings have heretofore been granted in
>> suits in equity in the courts of the United
>> States.  On a motion for a new trial in an
>> action tried without a jury, the court may
>> open the judgment if one has been entered,
>> take additional testimony, amend findings of
>> fact and conclusions of law or make new find-
>> ings and conclusions, and direct the entry of
>> a new judgment.
>
> Fed.R.Civ.P. 59.
>
> Reconsideration "is merited when there has been a
> clear error or manifest injustice in an order of the
> court or if newly discovered evidence is unearthed."

---

[5]Fed.R.Civ.P. 59 has been amended since Judge Sweet's
decision in Key Mech. Inc. v. BDC 56 LLC, however, the amendments
do not affect the substance of the rule.  See Fed.R.Civ.P.
Advisory Committee Notes, 2007 Amendments ("The language of Rule
59 has been amended as part of the general restyling of the Civil
Rules to make them more easily understood . . . . [t]hese changes
are intended to be stylistic only.") and 2009 Amendments
(amending time limits applicable to Rule 59 for filing post-
judgment motions).

In re Bird, 222 B.R. 229, 235 (Bankr. S.D.N.Y. 1998).
The movant must show that the court overlooked factual
matters or controlling precedent that might have mate-
rially influenced its earlier decision.  Id.; see also
Morales v. Quintales Transnational Corp., 25 F. Supp.
2d 369, 372 (S.D.N.Y. 1998) ("To prevail [the moving
party] must demonstrate an intervening change in con-
trolling law, the availability of new evidence, or the
need to correct a clear error or prevent manifest
injustice.").  This criterion is strictly construed
against the moving party.  Id.

        In addition, a "motion to reconsider should not
give the moving party another bite at the apple by
permitting argument on issues that could have been or
should have been raised prior to the original motion."
In re Bird, 225 B.R. at 235; see also Herschaft v. New
York City Campaign Fin. Bd., 139 F. Supp. 2d 282,
285-86 (E.D.N.Y. 2001); Air Espana v. O'Brien, 1997 WL
803756 at *[5] (E.D.N.Y. 1997) ("[W]hatever may be the
purpose of Rule 59(e) it should not be supposed that it
is intended to give an unhappy litigant one additional
chance to sway the judge." (citations omitted)).

See also In re Vargas Realty Enter. Inc., No. 09-10402 (SMB),

2009 WL 2929258 at *2-*3 (Bankr. S.D.N.Y. July 23, 2009)

(Bernstein, B.J.); Wechsler v. Hunt Health Sys., supra, 2004 WL

2210261 at *2; In re Crozier Bros., Inc., 60 B.R. 683, 687-88

(Bankr. S.D.N.Y. 1986) (Schwartzberg, B.J.).

        Appellant's first argument is that Judge Drain failed

to warn him that the evidentiary portion of the June 6, 2011

hearing would be coming to a close, and, as a result, he was

effectively precluded from presenting evidence concerning "intan-

gible damages" (Appellant's Brf. at 24).  This argument, however,

is without merit.  After determining that the City had willfully

32

violated the automatic stay during the November 23, 2010 hearing, Judge Drain directed that a second hearing be held specifically on the issue of damages (see Docket No. 296 at 15).  This hearing was held on June 6, 2011 and lasted approximately two hours (see generally Docket No. 297).  Nothing that occurred during the course of this hearing indicates that had appellant requested an opportunity to present further evidence at the hearing on the issue of "intangible damages," Judge Drain would have precluded him from doing so.

In fact, early in the hearing, Judge Drain noted that although appellant requested "pain and suffering damages"[6] in his First Motion, he had not "quanitif[ied]" those damages (Docket No. 297 at 18).  Judge Drain also explained at the close of the hearing that he was not going to award appellant separate, compensatory damages for emotional distress because appellant had not offered any evidence on the matter (Docket No. 297 at 65).  Appellant did not, at any point during the hearing, either

_____

[6]Specifically, Judge Drain stated:  "Your motion did seek what I'll just refer to as pain and suffering damages, but didn't quantify them" (Docket No. 297 at 18).  The section entitled "Damages" in appellant's First Motion does discuss a variety of damages not representing actual financial loss (see Docket No. 283 at 24-34), however, these damages were alleged only with respect to the 1997 Subaru.  As discussed above in Section III(A), appellant has abandoned any issues on appeal concerning the 1997 Subaru.

controvert these statements or express a desire to offer evidence concerning pain and suffering damages.

Additionally, appellant submitted an itemized list of damages to Judge Drain during the hearing (see Docket No. 297 at 16).  With respect to this list, appellant stated:  "The only damages that are not included would be the psychological, emotional damages that are not out-of-pocket.  But other than those damages . . . I can stipulate to the one thousand sixty-five dollars"[7] (Docket No. 297 at 16-17).  Again, appellant did not, at any point during the hearing, indicate to Judge Drain that he had further evidence to present on the issue of "intangible damages."  Thus, the record on appeal simply does not support appellant's contention that Judge Drain concluded the evidentiary portion of the June 6, 2011 hearing without notice to him.

Appellant's final argument, i.e., that he intended to testify as to various "intangible damages" during the June 6, 2011 hearing, is similarly without merit.  For the same reasons already articulated above, there is nothing from the record on appeal that indicates this was the case

---

[7]The $1,065.00 figure referenced by appellant reflects (1) a proposed valuation of the 1992 Subaru in the amount of $1,000.00 and (2) the out-of-pocket expenses that appellant incurred as a result of the City's violation of the automatic stay in the amount of $65.00 (see generally Docket No. 297 at 12-18).

34

On the basis of the foregoing, Judge Drain properly denied appellant's Second Motion.  It was appellant's burden to show that the court had either overlooked factual matters or controlling precedent that might have materially influenced its earlier decision, or that new evidence had become available since its earlier decision.  See Key Mech. Inc. v. BDC 56 LLC, supra, 2002 WL 467664 at *3.  Appellant simply did not carry this burden.  Judge Drain applied the correct legal standard to appellant's motion (see Docket No. 300 at 1-2), and, in reaching his conclusion, he did not rely on any clearly erroneous factual findings.  See Zervos v. Verizon New York, Inc., supra, 252 F.3d at 169.  Accordingly, the denial of appellant's Second Motion should be affirmed.

> 4.   Whether Judge Drain Properly Denied
>      Appellant's Request for a Court
>      Order to Compel the Trustee
>      to Assist Him and the
>      Trustee's Motion to Dismiss

Finally, appellant argues that Judge Drain erred by failing to compel the Trustee to assist him in presenting his claims of exemption and lien avoidance to the Court (Appellant's Brf. at 26).  Specifically, appellant contends that, pursuant to 11 U.S.C. § 323(a), a Chapter 7 Trustee is a fiduciary charged with protecting the interest of all estate beneficiaries --

including the debtor's interest in exemptions and possible
surplus property (Appellant's Brf. at 27).  It is unclear,
however, from what specific order of the Bankruptcy Court appel-
lant is appealing, and, in any event, what relief appellant is
seeking at this stage of the litigation.

Appellant's papers and the relevant hearing transcripts
provide the following context.  During the November 23, 2010
hearing, appellant raised the issue of the Trustee's obligation
to assist him in connection with his First Motion (see Docket No.
296 at 4-5, 15-17).  Judge Drain responded that the Trustee's
presence at the hearing was immaterial because appellant had
standing to pursue the issues raised in his motion (Docket No.
296 at 5).  Morever, Judge Drain noted that (1) the Trustee would
not have been required to take action against the City for which
there was no legal basis and (2) the Trustee's inaction with
respect to the City's violation of the automatic stay "actually
helped [appellant] because [it was] more likely than not that the
[damages] [would go to appellant] and not the estate" (Docket No.
296 at 16-17).

During the June 6, 2011 hearing, appellant again raised
the issue of the Trustee's obligation to assist him (see Docket
No. 297 at 8-12).  Appellant requested that "the Court [rule] as
to whether or not the trustee should be here . . . representing

[the issues raised in the First Motion] on behalf of [appellant and the estate]" (Docket No. 297 at 9).   Judge Drain first noted that it did not appear appellant had suffered any harm as a result of the Trustee's lack of involvement because all of the issues raised had been briefed and argued (Docket No. 297 at 9). Ultimately, Judge Drain determined that he would not delay the hearing because appellant's motion "d[id] not specifically seek to direct the trustee to take action on the specific issues that [were] before [the Court], and [instead] [was] really directed at the City and Marshal Rose . . . . " (Docket No. 297 at 11). Judge Drain concluded by informing appellant that if he wanted to pursue a claim against the Trustee, he was free to do so (Docket No. 297 at 11).

        The Trustee has moved to dismiss the present appeal because he contends that there is no "case or controversy" present as required by Article III of the United States Constitution (Docket Item 9; see also Motion by Roy Babitt, Chapter 7 Trustee, for an Order Dismissing the Appeal of William Charles Bace against the Chapter 7 Trustee Based on the Failure to Allege a Claim or Controversy Against the Chapter 7 Trustee and Memorandum of Law in Support of Motion, dated Jan. 19, 2012 ("Trustee's Mot.") (Docket Item 10), 1-2 & ¶ 24).   Specifically, the Trustee states that the orders which are the subjects of this appeal do

not implicate him in any way and are directed only at the City
and City Marshal Rose (Trustee's Mot. at ¶ 1). The Trustee also
contends that appellant has failed to allege that he suffered any
injury-in-fact as a result of the Trustee's inaction (Trustee's
Mot. at ¶¶ 25-26).

Appellant does not have a claim on appeal with respect
to the Trustee. First, Judge Drain was correct that appellant's
First Motion did not request an order directed to the Trustee to
take action on the specific issues raised in that motion. For
example, appellant made only one passing reference to the Trustee
and his statutory obligation pursuant to Section 323(a) in the
motion.[8] The Trustee is not mentioned again in the motion, nor
does appellant request any particular relief with respect to the

---

[8]Specifically, while discussing whether his debts to the DOF
were dischargeable pursuant to Section 523(a)(7), appellant (1)
quoted the statutory language of Section 323(a) and (2) stated
the following:

> What about the chapter 7 trustee, one might ask?
> As there's no obvious payday for a chapter 7 trustee in
> this dispute, why would a trustee voluntarily get
> involved? All that the trustee can expect is more
> work, more hassles, more court appearances, more
> attorney's fees . . . and then the debtor gets to ride
> away in the car! Can anyone feign surprise that Roy
> Babitt, Esq. informed the U.S. Trustee: "I have no
> interest in Mr. Bace's automobile or claimed
> exemption."

(Docket No. 282 at 32).

Trustee (see Docket No. 282 at 32, 51-52).  Accordingly, in entering the Orders dated June 28, 2011, Judge Drain did not make any findings of fact or any conclusions of law concerning the Trustee's action or inaction in appellant's bankruptcy case.  The Orders only address the City and City Marshal Rose (see Docket Nos. 299 and 300).

Second, with the exception of the Section 523(a)(7) dischargeability issue, appellant prevailed on the issues that he presented to Judge Drain and which are the subject of this bankruptcy appeal.  Judge Drain found that the City had willfully violated the automatic stay and awarded appellant not only compensatory, but also punitive, damages.  With respect to the dischargeability issue, as already discussed above, the case law and commentary are clear and conclusive that appellant's debts to the DOF are not dischargeable.  Thus, even if appellant is correct that the Trustee had a statutory obligation to assist him in presenting his claims to the Bankruptcy Court, appellant has not suffered any prejudice or damage as a result of the Trustee's inaction.  Accordingly, the Trustee's motion to dismiss the present appeal should be granted.

IV.  <u>Conclusion</u>

For all the foregoing reasons, I respectfully recommend that (1) the Bankruptcy Court's decision be affirmed in all respects and (2) the Trustee's motion to dismiss be granted.

V.  <u>OBJECTIONS</u>

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  <u>See</u> <u>also</u> Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Paul A. Crotty, United States District Judge, 500 Pearl Street, Room 735, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Crotty.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir. 1997); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992); <u>Wesolek v. Canadair</u>

<u>Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy v. Manson</u>,

<u>supra</u>, 714 F.2d at 237-38.

Dated:  New York, New York
        May 10, 2012

                                    Respectfully submitted,


                                    _____
                                    HENRY PITMAN
                                    United States Magistrate Judge

Copies mailed to:

Mr. William Bace
Apt. A
31 East 30th Street
New York, New York  10016

Joshua Wolf, Esq.
Assistant Corporation Counsel
City of New York
5th Floor
100 Church Street
New York, New York  10007

Thomas Lambert, Esq.
Lambert and Shackman PLLC
274 Madison Avenue
New York, New York  10016-0701

Heike M. Vogel, Esq.
Arent Fox LLP
1675 Broadway
New York, New York  10019